J-A04030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.D.W., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.A.K., | |
| Appellee | No. 1232 WDA 2014 |

Appeal from the Order entered July 14, 2014,
in the Court of Common Pleas of Jefferson County,
Civil Division, at No(s): 560-2013 C.D.

| | |
|---|---|
| A.D.W., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.A.K., | |
| Appellee | No. 1464 WDA 2014 |

Appeal from the Order entered August 28, 2014,
in the Court of Common Pleas of Jefferson County,
Civil Division, at No(s): 560-2013 C.D.

BEFORE:  BOWES, OLSON, and STRASSBURGER*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 10, 2015**

A.D.W. ("Mother") appeals from the order entered July 14, 2014 ("relocation order"), which denied Mother's petition to relocate with J.T.W. ("Child") (born in July of 2013), to Oahu, Hawaii, and granted, in part, and

---

* Retired Senior Judge specially assigned to the Superior Court.

denied, in part, Mother's petition to modify L.A.K.'s ("Father") schedule of partial custody, directing the parties to submit a proposed stipulation, or their proposals for partial custody, under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340.[1]  Mother also appeals from the order entered August 28, 2014 ("custody order"), which awarded shared legal custody of Child to Mother, and awarded primary physical custody to Mother, with partial physical custody for Father, in Pennsylvania, in accordance with a schedule set forth in the order.[2]  We affirm the orders on appeal.

In its opinion entered on July 14, 2014, the trial court ably set forth the factual and procedural background of this appeal, which we incorporate herein.  Mother and Father were never married.  Mother resides with her mother, K.W., ("Maternal Grandmother"), and Child in Maternal Grandmother's home in Falls Creek, Jefferson County, Pennsylvania.  Father resides in a bed and breakfast ("B & B") that he purchased in his own name, with Mother indebted on the note instrument, in Akron, Lancaster County, Pennsylvania.  The driving distance between the parties' homes in Pennsylvania is three and one-half hours.  Mother previously was employed by Chanel, and wishes to relocate to Hawaii with Child so that she may take another employment position with Chanel.  Mother wishes to live in a

---

[1]  Mother's appeal of the relocation order was docketed at 1232 WDA 2014.

[2]  Mother's appeal of the custody order was docketed at 1464 WDA 2014. On October 3, 2014, this Court, acting *sua sponte*, consolidated both actions.

residential area, Kailua, on the island of Oahu. Father is employed managing his B & B.

On July 9, 2013, Mother filed a complaint for custody. On that same date, the trial court entered an order, *ex parte*, as part of a scheduling order, awarding Mother sole legal and physical custody, subject to Father's supervised partial custody/visitation in Jefferson County, at Mother's discretion, pending further order of court. Moreover, on July 9, 2013, the trial court scheduled a conciliation conference to occur on September 4, 2013. On September 4, 2013, the parties filed a stipulation, and the trial court entered an interim order that provided for shared legal custody, with primary physical custody in Mother, and specified partial custody/visitation in Father.

On September 5, 2013, the trial court entered an order scheduling a mediation conference to occur on December 27, 2013, and, on September 11, 2013, re-scheduled the mediation conference to occur on December 12, 2013.

On January 8, 2014, the trial court scheduled the custody trial to commence on April 17, 2014. On January 30, 2014, Father filed a counter-affidavit to Mother's proposed relocation with Child. Mother filed a notice of proposed relocation, affidavit of service, and counter-affidavit regarding relocation on January 31, 2014. On February 10, 2014, Father filed a petition for contempt and special relief, alleging Mother was in contempt of

the September 4, 2013 order, and a certificate of service of counter-affidavit regarding relocation. On February 19, 2014, the trial court entered an order providing that the court would hear all matters regarding the petition for contempt and special relief at the scheduled custody trial. On April 3, 2014, the trial court amended the February 19, 2014 order to reflect the proper date of the scheduled custody trial.

On April 4, 2014, Father filed a petition for contempt, seeking to have Mother held in contempt of the February 19, 2014 order. On April 8, 2014, the trial court entered an order directing that the court would entertain the contempt petition at the scheduled custody trial on April 17, 2014.

On April 15, 2014, Mother filed a petition to permit relocation and modify Father's schedule of partial custody/visitation. Father filed an answer to Mother's complaint for custody on April 17, 2014, along with an answer to the petition to permit relocation and modify Father's scheduled partial custody/visitation.

On April 17, 2014, the trial court held the custody trial. At the trial, Mother testified on her own behalf. Next, she presented the testimony of H.B., her cousin. N.T., 4/17/2014, at 123-124. Mother also presented the testimony of T.G., a friend of her family, and C.J.J., her uncle. *Id.* at 139, 148. Finally, Mother presented the testimony of Maternal Grandmother. *Id.* at 152. Mother and Father had the court admit a number of documentary exhibits.

After the custody trial on April 17, 2014, the trial court ordered that the custody trial would continue on May 27, 2014, and entered a temporary order to remain in effect until continuation of the custody trial on May 27, 2014.

On May 23, 2014, Father filed a petition for contempt, seeking to hold Mother in contempt of the April 17, 2014 order. On May 27, 2014, the trial court entered an order providing that it would entertain the petition at the custody trial on that same date.

At the custody trial on May 27, 2014, Father presented, via telephone, the testimony of his mother, N.H. ("Paternal Grandmother"). N.T., 5/27/2014, at 6. Next, Father presented the testimony of his stepfather, E.H.; his half-brother, J.H.; and his brother, W.K. *Id.* at 37-38, 45-46, 63-64. Mother and Father had the court admit a number of documentary exhibits.

At the close of the record at the May 27, 2014 custody trial, Father agreed to withdraw the petition for contempt filed on May 23, 2014. N.T., 5/27/2014, at 189, 196. With regard to the motion for contempt filed on February 10, 2014, the trial court declined to find Mother in contempt and impose sanctions. *Id.* at 196-199. With regard to the motion for contempt filed on April 4, 2014, the trial court ruled that Mother was in contempt of the February 19, 2014 order for failing to provide a copy of her work schedule to Father, but did not impose any sanctions on her. *Id.* at 199.

On May 28, 2014, the trial court entered an order, directing the parties to file briefs with the court by June 10, 2014, and further providing Father shall have partial custody of Child, and Mother may return with Child to Hawaii, subject to further orders of the court.

On July 8, 2014, Father filed a petition to hold Mother in contempt of the May 28, 2014 order. On July 9, 2014, the trial court entered an order scheduling a hearing on the petition for August 28, 2014.

On July 14, 2014, the trial court entered an order denying Mother's petition for relocation. In the relocation order, the trial court also granted Mother's motion to modify Father's visitation schedule in part, and denied it in part. The relocation order provided as follows:

(a) [Mother's] Petition to Permit Relocation is DENIED.

(b) [Mother's] Petition to Modify [Father's] Schedule of Visitation is granted in part and denied in part.

   (1) Said Petition is DENIED as to any modification of custody and partial custody status. The parties shall continue to have shared legal custody of the minor child, [Child] . . ., with Mother . . . having primary physical custody and Father . . . having partial physical custody of said minor child.

   (2) The parties shall submit to the [c]ourt a proposed stipulation or their proposals for a schedule of partial custody away from the home of [] Mother on a regular basis and with sufficient frequency and duration as to foster a bond and a comfort level between Father and [C]hild. Said proposals shall be submitted to the [c]ourt by July 25, 2014 and the [c]ourt shall enter an [o]rder setting said schedule and conditions. In the event that neither a stipulation nor proposals are received, the [c]ourt shall enter an appropriate [o]rder by August 1, 2014.

Trial Court Order, 7/14/2014.

In the trial court's July 14, 2014 opinion, the trial court found that Mother has substantial debts because she did not have insurance to cover Child's birth, and that employment will be important to help her pay off the debt. The trial court also found that Mother is unable to obtain a bank loan because she signed onto a mortgage with Father on the B & B with a balance due of over $300,000 (although Mother's name is not on the deed). Moreover, Father cannot re-mortgage the B & B to clear the debt from Mother's name. The trial court also found that Father is behind on his payments on the mortgage secured by the B & B. The court concluded that, if Child is permitted to relocate to Hawaii, Father would be financially unable to travel to Hawaii on a frequent basis sufficient to maintain a bond with Child. Trial Court Opinion, 7/14/2014, at 3-4.

On July 25, 2014, Mother filed a notice of appeal and a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(ii) from the relocation order entered on July 14, 2014. *See* 1232 WDA 2014. On August 13, 2014, Father filed a petition in this Court seeking to quash the appeal. On September 12, 2014, this Court denied Father's petition without prejudice.

In the meantime, on August 26, 2014, Father filed a petition for special relief in the trial court, seeking, *inter alia*, the immediate return of Child to Pennsylvania, extended periods of partial custody, and attorney's

fees. On August 27, 2014, Father filed a praecipe to withdraw the petition for contempt filed on July 8, 2014.

On August 28, 2014, the trial court filed an order providing that Mother and Father shall have shared legal custody of Child; Mother shall have primary physical custody; and Father shall have periods of partial physical custody in accordance with a schedule set forth in the order. The order provided that it supplemented the order entered on July 9, 2014.

On September 5, 2014, Mother filed a notice of appeal and a concise statement of errors complained of on appeal from the custody order entered on August 28, 2014. *See* 1464 WDA 2014.

On September 10, 2014, Father filed a petition for contempt, seeking to hold Mother in contempt of the August 28, 2014 order. On September 11, 2014, the trial court entered an order scheduling a hearing on the petition to occur on September 18, 2014.

On September 12, 2014, the trial court entered an opinion pursuant to Pa.R.A.P. 1925(a) with regard to the appeal from the relocation order entered on July 14, 2014.

On September 17, 2014, Mother filed preliminary objections to Father's petition for contempt. After the contempt hearing, on September 18, 2014, the trial court entered an opinion and order on the petition for contempt, finding Mother in contempt of the July 14, 2014 order. On

September 18, 2014, the trial court entered an opinion Pa.R.A.P. 1925(a) with regard to the appeal from the August 28, 2014 custody order.[3]

On September 18, 2014, the trial court entered an opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Mother raises two issues for our review:

I. Whether the trial court erred in concluding that the child's best interests would not be served by allowing a relocation to Hawaii that would significantly enhance Mother's ability to financially provide for her child due solely on the geographical distance from Father that it would present?

II. Whether the trial court had jurisdiction under the provisions of Pa.R.A.P. 1701 to impose an order establishing a partial custody schedule for Father after the order denying Mother's request for relocation had been appealed?

Appellant's Brief, at 8.

In his brief, Father raises the issue of whether this Court should quash Mother's appeal from the order of the trial court entered on July 14, 2014. **See** Father's Brief, at 13. He argues that Pa.R.A.P. 341, regarding appeals from final orders, controls the appeals, and that Mother's appeal from the order entered on July 14, 2014, was not an appeal from a final order.

---

[3] On October 17, 2014, Mother filed a notice of appeal and a concise statement of errors complained of on appeal, with regard to the September 18, 2014 contempt order. **See** 1701 WDA 2014. On October 29, 2014, this Court denied Mother's motion to consolidate that appeal with the present appeals, the appeals from the relocation and custody orders. On January 28, 2015, the panel of this Court heard oral argument on the present appeals. Subsequently, on February 6, 2015, Mother withdrew the appeal at 1701 WDA 2014.

Mother argues in the second issue presented in her brief that she properly appealed the order entered on July 14, 2014, and that the trial court lacked jurisdiction to enter the August 28, 2014 order under Pa.R.A.P. 1701, which generally prohibits the trial court from proceeding further in a matter that is on appeal. She asserts that the trial court's imposition of a schedule of partial custody to be exercised in Pennsylvania, with which she could not comply while residing in Hawaii, did not preserve her rights on appeal, as required by Pa.R.A.P. 1701(c). Mother argues that, as a result of her appeal from the July 14, 2014 order, the trial court had no jurisdiction to enter the August 28, 2014 order, and erred in entering the order. Mother's Brief at 16. In support of her argument, Mother relies on *In re Deed of Trust of McCargo*, 652 A.2d 1330, 1337 (Pa. Super. 1994), *citing* Pa.R.A.P. 1701(a) (holding that a trial court order was improper because, *inter alia*, it was entered after two appeals had been filed from the original order). Mother's Brief, at 23.

Father responds that the trial court entered the August 28, 2014 order as its final order, so the matter is governed by Pa.R.A.P. 341. He asserts that Rule 1701 is inapplicable. Father's Brief, at 13.

The trial court explained its decisions in the August 28, 2014 order as follows:

> 1. In this [c]ourt's [o]rder of July 14, 2014, the [c]ourt stated that it was intending to enter a further [o]rder "setting said schedule and conditions" and that if the parties did not enter either a stipulation or proposal as to partial custody, the

[c]ourt would enter its [o]rder by August 1, 2014. [Father] filed a proposed partial custody schedule. [Mother] did not file a proposed partial custody schedule but instead filed an appeal to the Superior Court on July 25, 2014. [Father] thereafter filed a [m]otion to [q]uash [a]ppeal based upon this [c]ourt's [o]rder of July 14, 2014 not having been a final order of [c]ourt[,] and said [m]otion to [q]uash was denied without prejudice by the Superior Court on September 12, 2014. Because of the [a]ppeal, this [c]ourt did not enter a final order, [sic] on the anticipated dated of August 1, 2014. [Father] thereafter filed a [p]etition for [c]ontempt and a [p]etition for [s]pecial [r]elief[,] and[,] although said [p]etitions were later withdrawn, this [c]ourt, realizing that confusion had been created by its July 14, 2014 Order[,] which had been intended to be an interim order awaiting proposals for partial custody, filed its August 28, 2014 [o]rder which contains detailed conditions as to custody and partial custody, in accordance with Pa.R.A.P. 341(b)(1).

2. As stated in Paragraph 1 above, the [o]rder of August 28, 2014 was filed as a final order of this [c]ourt, the previous [o]rder of July [14], 2014 having been an interim order which left the parties confused and without direction as to how to comply with the partial physical custody awarded to the [Father]. The order of [July 14], 2014 not being a final order of [c]ourt, Pa.R.A.P. 1701 is not applicable. In the event that said Rule is deemed to be applicable, the action that this [c]ourt took would have been permitted under § 1701(b)(1) in attempting to preserve the status quo and under § 1701(b)(2) in providing the detail necessary for enforcement of this [c]ourt's [o]rder of July 14, 2014.

Trial Court Opinion, 9/18/2014, at 1-2.

We accept the trial court's explanation of its intention to enter the July 14, 2014 order as an interim order, pending a final order on the partial custody schedule for Father, which the trial court entered as its final order on August 28, 2014. Thus, we agree with the trial court, and Father, that Pa.R.A.P. 1701 is not applicable to the trial court's August 28, 2014 order. We find Mother's appeal from the August 28, 2014 order was filed from a

final order pursuant to Pa.R.A.P. 341 and Pa.R.A.P. 905(a). ***See G.B. v. M.M.B.***, 670 A.2d 714, 720 (Pa. Super. 1996) (holding that a custody order will be considered final and appealable only if it is both entered after the court has completed its hearings on the merits, and intended by the court to constitute a complete resolution of the custody claims pending between the parties). Pursuant to Pa.R.A.P. 905(5), "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(5). Here, Mother filed her notice of appeal from the relocation order prematurely, because the trial court ordered additional actions to transpire before ruling on the custody matter. However, under Rule 905, the appeal was perfected upon entry of the custody order on August 28, 2014. As such, the consolidated appeal is properly before us.

Thus, we address the merits of Mother's appeal. Mother contends that the trial court erred in concluding that Child's best interests would not be served by allowing Mother to relocate with Child to Hawaii, solely on the geographical distance of Hawaii from Father's home in Pennsylvania. Mother claims the relocation would significantly enhance her ability to provide financially for Child. Mother argues that she succeeded in carrying her burden of proving that she could provide an improved environment for Child in Hawaii that would be in Child's best interest. She asserts that the trial court erred in denying her relocation petition based on a concern that Father

would not be able to establish a bond with Child. Mother contends that the trial court over-emphasized the logistical problems created by the distance over the financial and emotional benefits that would inure to both her and Child.

Initially, we observe that, as the custody trial in this matter was held in April and May of 2014, the Act, 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. **C.R.F. v. S.E.F.**, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**Id.** at 443 (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on

- 13 -

the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) *quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

Regarding the definition of an abuse of discretion, this Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a

custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) of the Act, 23 Pa.C.S.A. § 5328(a), sets forth the best interest factors that the trial court must consider. **_See E.D. v. M.P._**, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).[4] Section 5337(h) sets forth the relocation factors that a trial court must consider when ruling on a relocation petition.

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

---

[4] The trial court considered the best interest factors in its opinion filed on July 14, 2014. **_See_** Trial Court Opinion, 7/14/2014, at 5-7. Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Although applicable at the time of trial in the present matter, there was no evidence presented that would have required the trial court's consideration of this factor.

Where a parent requests to relocate with a child, the trial court must consider the following ten factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h); *see E.D.,* 33 A.3d at 81-82 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child."); *see also D.K. v. S.P.K.*, 102 A.3d 467, 477-78 (Pa. Super. 2014) (holding that trial court is to consider Section 5337(h) factors only where parent is relocating with child).

Moreover, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" *C.M.K. v. K.E.M.*, 45 A.3d 417, 421 (Pa. Super. 2012), *quoting Baldwin v. Baldwin*, 710 A.2d 610, 614 (Pa. Super. 1998).

Here, the trial court found the following with regard to the relocation factors:

(1) Child has had an almost exclusive relationship with Mother and her family since the birth of [C]hild [in] July [] 2013. Mother is nurturing, loving and responsive to all of [C]hild's routine needs and [C]hild is bonded with her. [C]hild has a similar relationship with the maternal grandmother.

(2) [C]hild is only one year old and is normal in development and is a baby in need of the care a baby must be given. As of the date of the hearing he was still being breast fed as well as

- 17 -

being given solid foods. [C]hild being an infant, there is no indication of what impact relocation would have on him other than to deprive him of the relationship with Father and with extended family of both Mother and Father. For the next four years his educational needs could be met at Falls Creek, Akron or Kailua. The [c]ourt has no evidence of the quality of schools, only their availability, from kindergarten on into the future.

(3) Considering the logistics of transporting a one-year old child between Hawaii and Lancaster County on a twelve hour flight at a cost of well over a thousand dollars, it would be a formidable task for the parties to preserve the relationship between Father and [C]hild, or, if custody were to be awarded to Father, between Mother and [C]hild. This is especially true when Father has serious financial problems, is late on mortgage payments and may have to close the business he owns and earn his income from new ventures with which he is experimenting. Although Mother's financial situation would improve in Hawaii, she is at present a creditor [sic] on a large debt out of Father's B&B and could not afford frequent trips.

(4) [C]hild is unable to express a preference.

(5) There is an established pattern of conduct on the part of Mother to thwart the relationship of [C]hild with Father[.]

(6) The relocation will enhance the general quality of life for Mother financially and in her career as well as emotionally in having a satisfying, challenging position and being in a stimulating, progressive environment.

(7) At this stage of his development the relocation would not have an effect on [C]hild's general quality of life. Emotionally, he is dependent on his family and caregivers, not on the outside environment. Financially, at an unpredictable time in the future if Mother is successful in her career, he could benefit from enhanced opportunities derived from her income.

Educationally, it would be a matter of years before this could be determined and this [c]ourt does not have evidence as to what his educational situation may be when he reaches the age for attendance at grade school or even pre-school.

(8) Mother's motivation and reasons for wishing to relocate are genuine in her desire to better her situation and enhance her

career. It is also evident that she has a keen desire, evidenced by her and her family's conduct to date, to prevent Father from exercising his rights to parent [C]hild.

(9) There is no risk of harm to [C]hild of any abuse from either party.

(10) Another relevant factor is that in Hawaii Mother is obligated to travel extensively in her work and setting a schedule for partial custody would be difficult. In addition, she proposes that [Maternal Grandmother] would be making frequent trips and could bring [C]hild to Pennsylvania for partial custody periods with Father. [Maternal Grandmother's] hostile conduct with Father makes it impossible for her to be the facilitator of transfers of [C]hild between the parents.

Trial Court Opinion, 7/14/2014, at 7-8.

The trial court offered the following reasons for denying Mother permission to relocate with Child:

As to the award of custody, itself, the [c]ourt is aware that the factors weigh heavily in favor of Mother partially because of her being successful in preventing Father from fulfilling his paternal role. The negative conduct of Mother in the analysis of the factors is significant but the positive factors outweigh the negative when the decision of the [c]ourt has to be whether to remove [C]hild from Mother's care and place him in the care of [F]ather whom he scarcely knows and who has had no experience caring for him. To hold Mother accountable for her behavior would be at the expense of a baby whom the [c]ourt cannot in good conscience snatch away from the only parent with whom he feels secure, comfortable and with whom he has a strong bond. Mother's obstinacy and defiance should not be rewarded but the baby cannot be made the victim. Mother should not feel a sense of empowerment over having been awarded custody but she must, instead, realize that she will not be permitted in the future to treat Father as an interloper nor shall she stand by to let her family rebuff his legitimate efforts to be a father to his child.

As to relocation, an analysis of the factors reveal[s] that Mother has a valuable opportunity to better herself in moving to Hawaii, as discussed above. In her testimony she revealed her plan for

- 19 -

providing Father with frequent and meaningful periods of partial custody if the [c]ourt would grant relocation. The crux of her plan was that [Maternal Grandmother] would be travelling back and forth frequently between Pennsylvania and Hawaii and could bring [C]hild to spend time with Father. Unfortunately, testimony from a number of witnesses established that [M]aternal [G]randmother is incapable of taking on that task because of her unwarranted treatment of Father and her determination to limit visitations and to make Father uncomfortable at visits. Mother abetted such behavior on the part of [Maternal Grandmother] and, also, made it clear that she, herself, hoped to exclude Father as much as possible from [C]hild's life. From the moment that she refused to name Father on[C]hild's birth certificate, an action normally taken only when a father is unknown, to the times when she refused to communicate in any way, and refused to even see the father on his visits even though she was surrounded by friends and family who could prevent any misbehavior by Father, she has made it clear that being as far away from Father as possible would be an ideal situation for her. Despite the factors which show the benefits to Mother of relocation, those factors are outweighed by [f]actors (3), (5) and (10). The [c]ourt cannot permit a relocation which would deprive [C]hild of a relationship with [F]ather. At the age of one, [C]hild would have to see [F]ather frequently enough that [F]ather would not be a stranger. Otherwise, it would cause fear and be traumatic for [C]hild to be dropped off at distant intervals to be with a stranger, his father. The [c]ourt could have worked out partial custody in this case and could have permitted relocation if Mother had shown her willingness to let Father be a father and could be capable of paying the costs of monthly visits of Father to Hawaii in months when she could not transport [C]hild to Pennsylvania. That not being the case, the court finds that relocation would end any genuine paternal relationship between Father and [Child].

Trial Court Opinion, 7/14/2014, at 7-9.

Mother concedes that there is no evidence in the record that she could afford to pay Father's costs to travel to Hawaii to see Child. Mother states that, in fact, the trial court, on September 18, 2014, entered an order on Father's contempt petition, which imposed a sanction on her for violating the

order entered on July 14, 2014. Mother's Brief, at 21. In the contempt order, the trial court directed Mother to pay the costs of transporting Father to Hawaii every six weeks, and to pay for his lodging for five days during his stay while the matter is on appeal.[5] *Id.* Mother suggests that the trial court's sanction confirms that a schedule of partial custody could be worked out which would allow her to relocate with Child to Hawaii, and that there should be shared transportation costs. *Id.* Mother contends that the trial court's failure to envision a schedule of partial custody that required Father to travel to Child in Hawaii ignored the real benefits provided to Mother and Child from the proposed move to Hawaii, and that the move is in Child's best

_____

[5] Specifically, in its Memorandum Opinion of September 18, 2014, the trial court found as follows:

> Mother has not followed the [trial court's partial custody o]rder [of July 14, 2014] because she has not provided any partial custody whatsoever. … Mother is clearly in violation of this … [o]rder to provide [F]ather with partial custody. At the custody hearing, [M]other testified that she or [Maternal Grandmother] would return to Pennsylvania [from Hawaii] on a frequent basis and would bring [C]hild to visit [F]ather. In the four months since the custody hearing, [M]other has not followed through with her proposal for providing a remedy to the partial custody dilemma caused by her relocation.

Trial Court Memorandum Opinion, 9/18/14, at 1-2. Thus, the trial court ordered that "[a]s a sanction, [Mother] shall pay the reasonable travel and lodging expense[s] for [Father] to be able to visit [Child] in Hawaii at least once every six weeks until a decision is rendered by the Superior Court [in this appeal]." Order, 9/18/14. At oral argument, counsel for the parties advised this Court that, as of the date of the argument, Mother was still living in Hawaii with Child. Nothing in the certified record indicates whether or not Mother has complied with the trial court's September 18, 2014 order by paying Father's expenses to visit Child in Hawaii.

interest. *Id.* at 21-22. In support of her argument, Mother cites cases that pre-date the enactment of the relocation factors. In her reply brief, Mother argues that the trial court's conclusions regarding factors (3), (5), and (10), as set forth at Section 5337(h), were not supported by the evidence of record, and that it was unreasonable for the trial court to speculate, in reviewing factor (8), that she had some ulterior motive in wanting to take the position in Hawaii.

After a careful review of the record, we find that the trial court's conclusion, regarding factor (8) of Section 5337(h), that "[i]t is also evident that Mother has a keen desire, evidenced by her and her family's conduct to date, to prevent Father from exercising his rights to parent the child[,]" is supported by the evidence in the record. There was ample, competent evidence in the record upon which the trial court could have properly supported its conclusion that Mother and her family were behaving to obstruct Father's partial custody time with Child. We find no basis upon which to disturb the trial court's denial of relocation in this matter, and its order of partial physical custody for Father in Pennsylvania. *C.R.F. v. S.E.F.*, 45 A.3d at 443.

To the extent that Mother refers to the trial court's September 18, 2014 order finding her in contempt, we remind Mother that the order imposed a sanction on Mother to provide for Father to exercise his partial physical custody rights in Hawaii "until a decision is rendered by the Superior

Court." Trial Court Order, 9/18/14.[6] As we are affirming the trial court's orders denying relocation and providing for Father to exercise partial custody in Pennsylvania, we emphasize that Mother must abide by the orders of the trial court, as "[e]ach court is the exclusive judge of contempts against its process." *See Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001).

Orders affirmed.

Judge Bowes joins this memorandum.

Judge Strassburger files a Concurring and Dissenting Memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015

---

[6] The September 18, 2014 order sanctioning Mother is in the certified record before this Court, as it was entered the same day as the trial court's Rule 1925(a) opinion. As noted, **supra**, Mother has withdrawn her separate appeal from the September 18, 2014 contempt order, so the order is not before this Court for a ruling. However, this Court will not permit Mother to both withdraw her appeal and use the order to bolster her argument. Thus, we have reviewed the September 18, 2014 contempt order as part of our review of the certified record, and we clarify for Mother that she must now comply with the July 14, 2014 relocation order and August 28, 2014 custody order, as we have affirmed them.