J-S26017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| P.A.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| T.W. A/K/A T.S. | |
| Appellee | No. 2105 MDA 2014 |

Appeal from the Order Entered on November 21, 2014
In the Court of Common Pleas of Franklin County
Civil Division at No: 2001-595

BEFORE:  OTT, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                    **FILED MAY 06, 2015**

P.A.W. ("Father") appeals the November 21, 2014 order, in which the trial court granted primary custody of T.A.W. ("Child") (born in October 2000) to T.W. ("Mother"), and permitted Mother to relocate with Child to Delaware.  We affirm.

On February 26, 2001, when Child was approximately four months old, Father filed a complaint in custody.  Mother and Father were not married.  Following a conciliation, a temporary order evidently was entered, although that order does not appear in the certified record.  On June 7, 2002, the trial court entered a new custody order that provided Mother with primary physical custody and Father with substantial partial custody, which remained in effect until 2013.

On August 21, 2013, Father filed an emergency petition, in which he alleged that Mother was planning to relocate with Child without providing proper notice. Mother filed a response, in which she alleged that she had sent Father a Notice of Proposed Relocation. On September 9, 2013, the trial court dismissed Father's petition and ordered Father to file a counter-affidavit if he objected to Mother's proposed relocation. Because Father did not file a timely counter-affidavit, on October 30, 2013, the trial court granted Mother's request for relocation and revised the parties' physical custody schedule. Father filed a motion for permission to file a *nunc pro tunc* counter-affidavit, which the trial court denied. However, Mother did not relocate.

On January 9, 2014, Father filed a petition to modify custody based upon the fact that Child did not relocate. On February 17, 2014, the parties reached an agreement pursuant to which Father had custody six out of fourteen nights during the school year and alternating weeks during the summer.

On September 18, 2014, Mother served upon Father another Notice of Proposed Relocation. Father timely filed a counter-affidavit. Mother filed a petition to modify custody. The trial court held a hearing on the relocation/custody modification on November 14, 2014.

At that hearing, Mother testified that she had been married to R.S. ("Husband") for eight years. Notes of Testimony ("N.T."), 11/14/2014, at 4. Husband has three children from prior relationships, two of whom live with

Husband and Mother full-time. Mother has one other child from a prior relationship who lives with Mother primarily. Mother and Husband have one child. *Id.* at 10-11. Including Child, five children live primarily with Mother and Husband.

Husband and the children, excluding Child, relocated to Millsboro, Delaware in October 2014 after Mother and Husband sold their home in Shippensburg, Pennsylvania. Mother testified that they were buying the Millsboro house in which the family was living and that closing was scheduled for December 9, 2014. *Id.* at 5-7. Mother and Child were residing with Mother's mother pending the outcome of the relocation hearing. *Id.* at 5. Mother testified that they did not move when the prior relocation request was granted because they could not sell their house in Shippensburg and could not afford two houses. *Id.* at 35.

Husband testified that he ran his own business until it closed in 2013. *Id.* at 47. From then until he started at his current job in Delaware, he worked various jobs. The Delaware job paid $20.00 per hour and he worked forty-eight hours per week. *Id.* at 48-49. Husband anticipated that he would receive a raise as of January 1 to $27.00 per hour. *Id.* at 48, 50. Husband also testified that he was now in a union and received benefits that he did not have when he was self-employed. *Id.* at 51-52. Husband had a job in Delaware when the prior relocation was granted, but gave it up and moved back to Pennsylvania when the Shippensburg house did not sell. *Id.* at 53.

Mother testified that she has been Child's primary custodian. *Id.* at 14. Mother participated in Child's cheerleading and made arrangements for Child to continue competitive cheerleading in Delaware. *Id.* at 16-20. Mother testified that the move was precipitated by Husband's job opportunity in Delaware. *Id.* at 22. Mother had obtained two part-time jobs in Delaware that would offer health insurance and a retirement plan that her Pennsylvania job did not offer. *Id.* at 23-24. While Mother might work more total hours than she worked in Shippensburg, she testified that she would not be working nights and had flexibility for extracurricular activities or if the children were ill. *Id.* at 25.

Father testified that he lives in Chambersburg with his girlfriend, C.W., and their two children, in addition to Child. *Id.* at 67. Father testified that he and Child share a strong relationship and that Child gets along well with his children and with C.W. *Id.* at 69-70. Father believed that removing Child from her school would be harmful to her. He indicated that, if he were awarded custody, he could petition to have her remain in the Shippensburg school district. *Id.* at 76. However, Father acknowledged that Child might have to change schools. *Id.* at 92. Father also believed that the relocation would have a negative impact on Child's relationship with him and her half-siblings. *Id.* at 82-83.

Child testified that she has a good relationship with both parents and Husband, although sometimes she does not get along with C.W. *Id.* at 119. Child admitted to being anxious about moving, but acknowledged that,

regardless of who received primary custody, she was going to have to move. *Id.* at 130. Child testified that she would want to move to Delaware, because she had been with the half- and step-siblings in Mother's house for a longer time, and that "[i]t would just be really hard not to like go with them." *Id.* at 131. Child acknowledged that she had an easier relationship with Mother. *Id.* at 132. However, Child believed that she would develop a better relationship with Father if she lived primarily with him. *Id.* at 131-32.

On November 21, 2014, on the record, the trial court made detailed findings of fact and conclusions of law that tracked the custody and relocation factors set forth in 23 Pa.C.S.A. § 5328(a) and § 5337(h), respectively. On the same day, the trial court issued an order permitting Mother to relocate with Child after December 9, 2014, provided that Mother submit to the Court documents proving that Mother and Husband completed the purchase of their home in Delaware. The order also provided Father with partial custody on alternating weekends during the school year and the majority of the summer break.

On December 10, 2014, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 8, 2015, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Father raises three issues for our review:

1. Did the trial court abuse its discretion and act contrary to the weight of the evidence by finding that Mother had met the requisite burden of proof necessary for relocation?

2. Did the trial court err when it denied Father's counsel the opportunity to question the fourteen-year-old child *in camera* regarding the relocation, and thus effectively denied [Father's] due process rights?

3. Did the trial court err in issuing a conditional order providing for relocation?

Father's Brief at 7.

Our scope and standard of review are well-settled:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (citation omitted). With any child custody case, this Court has long stated that the paramount concern is the best interests of the child. *Landis v. Landis*, 869 A.2d 1003, 1011 (Pa. Super. 2005). This standard requires a case-by-case assessment of all of the factors that may legitimately affect the "physical, intellectual, moral and spiritual well-being" of the child. *Id.* When a custody dispute involves a request by a party to relocate, we have explained, "there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." *Baldwin v. Baldwin*, 710 A.2d 610, 614 (Pa. Super. 1998).

*C.M.K. v. K.E.M.*, 45 A.3d 417, 421 (Pa. Super. 2012).

In its November 21 order, the trial court granted relocation and changed the physical custody schedule for the parties. Consequently, the trial court was required to consider all of the relevant custody factors enumerated in 23 Pa.C.S.A. § 5328(a) and all of the relevant relocation factors pursuant to 23 Pa.C.S.A. § 5337(h). **See A.V. v. S.T.**, 87 A.3d 818, 822-23 (Pa. Super. 2014). The factors are as follows:

**(a) Factors. –** In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where

reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

**(h) Relocation factors. –** In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337.

The trial court provided a detailed discussion of each of the relocation and custody factors on the record in open court. *See* N.T., 11/21/2014, at 2-27. Father does not contend that the trial court did not adequately consider the factors. Instead, Father asserts that the court's conclusions are not supported by the record and argues that the court's order was contrary to the weight of the evidence. Father's Brief at 14-16.

The trial court found that the move would benefit Mother's quality of life through the possibility of advancement for Husband. N.T., 11/21/2014, at 13-16. The court acknowledged that there was some uncertainty in Mother's and Husband's testimony regarding the details of Husband's new job and union protections for his position. However, the trial court found that Mother and Husband were honest in their testimony. *Id.* at 16. The court also concluded that there would be a financial benefit to Child from the move because of Husband's job, but that Child's education or emotional well-being would not be enhanced by the move. *Id.* at 17. In the end, the trial court concluded that many of the factors were essentially equal – that both Mother and Father provided appropriate care for Child and that Child was "an overall fairly stable child" who "will be able to make friends whereever she goes." *Id.* at 21-22. However, the trial court ultimately relied upon the fact that Child was more bonded to and had a closer relationship with Mother. *Id.* at 27. The trial court also acknowledged that, because Mother and Husband had sold their home in Pennsylvania, Child likely would be changing schools regardless of the relocation and custody decision. *Id.* at 7-8. Based upon its review of the factors, the court granted relocation and awarded primary custody to Mother.

The record supports the trial court's conclusion that Child has a closer relationship with Mother. While Child did not want to choose with whom to live, Child acknowledged that it would be hard not to live with Mother and her family. Further, although Husband lacked some specifics regarding his

union membership, his new job paid more than his prior job, provided benefits, and at least presented the opportunity for advancement. That testimony in combination with Mother's testimony regarding her new jobs and the possibility of a higher-paying job with a bank in Delaware supports the trial court's findings that there is an economic benefit to the move that would enhance Mother's and Child's lives. The trial court found that Husband and Mother were honest in their testimony regarding the economic benefits of the move. Further, Mother testified regarding the Millsboro home, its adequacy for the family, and the details of the planned purchase. Husband testified about a planned addition to the home to provide the family with additional space. We must defer to the trial court's credibility and weight determinations. *See C.M.K.*, *supra*. Given the trial court's focus upon the economic benefits and Child's bond with Mother and the record's support for its findings, the trial court did not abuse its discretion in granting relocation and awarding Mother primary custody.

In Father's related third issue, he argues that the trial court erred in granting relocation when there were questions regarding Mother's purchase of a home in Delaware. Father contends that the trial court also erred in permitting Mother to file documents relating to the home purchase after it was completed because Father could not question Mother regarding those documents. Father's Brief at 17.

When the trial court made its findings of fact, it acknowledged that it was concerned about Mother's living situation because a prior relocation had

fallen through and Mother and Husband had not yet closed on the Millsboro house. N.T., 11/21/2014, at 27-28. The trial court also was concerned that if it ordered Child to stay with Father until Mother closed on the house, it would cause turmoil for Child and potential damage to Child if Mother's presence was removed from her life. *Id.* at 29. The trial court concluded that it would grant the relocation, but that if Mother did not close on the Millsboro house on December 9, 2014 and did not have suitable housing, Child was to be returned to Father and Father would have primary custody for the rest of the school year. *Id.* at 29-30. After discussion with counsel, the trial court agreed that Mother and Child would remain with Mother's mother until the December 9 closing; then Mother would provide the court with copies of the closing documents, and the relocation would proceed. *Id.* at 30-32. On December 10, 2014, Mother filed a copy of the deed, the mortgage, the signed note, and the signed settlement statement for the Millsboro house.[1]

The trial court indicated that it made this "conditional" order to protect Child, should the home purchase not go as planned. Trial Court Opinion ("T.C.O."), 1/8/2015, at 5-6. The trial court found Mother and Husband to

---

[1] Father notes that the documents filed list only Husband as the owner of the property. Father's Brief at 17 n.1. Father does not explain, and we fail to see, why this is relevant. Whether Mother and Husband or Husband alone is the listed owner, Child has stable housing in Delaware.

be credible in their testimony regarding the planned purchase and determined that the home would be suitable for Child. *Id.* at 5.

Instantly, the trial court felt the need to provide extra protection, in light of the earlier failed relocation. Father provides no authority for his contention that a conditional order is *per se* error. Mother and Husband both testified regarding the Millsboro home, including the details of the planned purchase and closing. While Mother could not provide closing documents, she did provide the real estate listing describing the house and a "pre-occupancy agreement" setting forth the terms by which Mother and Husband were living in the home prior to purchase. Father had ample opportunity to cross-examine Mother and Husband regarding the home. We find no error in the trial court seeking confirmation of the closing before permitting the relocation. The trial court's relocation decision is supported by the record, and there is no abuse of discretion.

In his remaining issue, Father argues that the trial court erred when it did not allow Father's attorney to question Child directly. Father contends that Child was old enough to be questioned by counsel. Father concludes that the trial court's analysis of the relocation factors was "tainted" because counsel was unable to question Child. Father's Brief at 16-17.

Our rules governing the interrogation of a child in a custody action are as follows:

> (b) The court may interrogate a child, whether or not the subject of the action, in open court or in chambers. The interrogation shall be conducted in the presence of the attorneys and, if

permitted by the court, the parties. The attorneys shall have the right to interrogate the child under the supervision of the court. The interrogation shall be part of the record.

Pa.R.C.P. 1915.11(b).

Here, the trial court stated its intention to ask all questions of Child and then to take a brief recess to confer with counsel to determine whether additional questions were necessary. N.T., 11/14/2014, at 110. Both attorneys consented to this procedure. *Id.* After questioning Child extensively about her family life and her relationships with family members, her school and activities, and her thoughts about the proposed move, *see id.* at 111-36, the court took the promised recess. *Id.* at 136. After returning, the court asked Child additional questions. *Id.* at 136-40. The trial court then asked the attorneys whether there was anything else to cover. Father's attorney asked the court to question Child further regarding "jobs." *Id.* at 140. While the court initially refused because it believed the issue had been addressed, it then decided to ask a few more questions. *Id.* at 140-42. After Child left the room, Father's attorney then placed an objection to the court's procedure on the record.[2] *Id.* at 143-44.

_____

[2] We note that an objection must be made at the earliest opportunity and that failure to do so can result in waiver. *See State Farm Mut. Auto. Ins. Co. v. Dill*, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*); *Mazlo v. Kaufman*, 793 A.2d 968, 969 (Pa. Super. 2002) ("Our Supreme Court has frequently stressed the necessity of raising claims at the earliest opportunity . . . ."). By first consenting to the trial court's proposed procedure and then waiting to object until after the witness was excused, Father arguably did not preserve his objection in a timely manner. However, *(Footnote Continued Next Page)*

While Rule 1915.11 might by its terms appear to provide authority to Father's argument, we previously have allowed the trial court flexibility in interrogating a child. In *A.O. v. M.O.*, we explicitly approved of a procedure very similar to the one used in this case. 856 A.2d 1204, 1208 (Pa. Super. 2004). In that case, during a custody modification hearing, the trial judge conducted the interrogation of the twelve-year-old child. The attorneys were not permitted to question the child directly, although the judge did ask the attorneys if there were questions they wanted him to ask. The trial judge stated that he believed that this approach was the best way to elicit candid answers from the child. This Court concluded that the requirements of Rule 1915.11 were met, and that the approach was reasonably crafted to be fair to the parents and the child. *Id.*

Because the rule states that questioning the child is to be accomplished under the court's supervision, the trial court can determine what method is best to ensure that the child provides candid information, while protecting the child as much as possible and appropriate from the anxiety of the adversarial process, especially when there is the potential that zealous advocates may subject the child to more pressure than intended. As long as the trial judge ensures that that the attorneys have the opportunity to provide questions or subject areas for inquiry, the rule should be satisfied.

*(Footnote Continued)* ────────────

as neither Mother nor the trial court assert waiver, we will resolve the issue on its merits.

Instantly, the trial judge twice inquired whether the attorneys had additional questions beyond those the judge thought appropriate. The trial judge was in the best position to observe the attorneys and Child and to determine the best method to obtain candid responses from Child. Pursuant to *A.O.*, the method chosen did not run afoul of Rule 1915.11. We find no error by the trial court.

Finally, on April 14, 2015, Mother's counsel filed in this Court an application to withdraw as counsel. Counsel alleges that Mother has not communicated with counsel since December 15, 2014. Counsel for Father does not object to the application. Counsel certifies that she served the application upon Mother. Mother has not filed a response. Given counsel's allegations and Mother's lack of response, we grant counsel's application and permit her to withdraw from her representation of Mother in this Court. We remind Father's counsel that any future petitions in this Court must be served upon Mother directly.

Order affirmed. Application granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2015

- 16 -