J-A06009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARIA BECKMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTY YANNARELLA | : | No. 1149 WDA 2022 |

Appeal from the Order Entered September 6, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  11060 of 2010

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED:  April 12, 2023**

Appellant, Maria Beckman, ("Mother") appeals from the September 6, 2022 order entered in the Court of Common Pleas of Lawrence County that, *inter alia*, granted Marty Yannarella ("Father") primary physical custody during the academic school year for their minor child, M.Y., born July 2007, ("the Child") and granted Father's petition to relocate.  We affirm.

The trial court summarized the factual history as follows:

[Mother and Father] are the natural parents of [the Child.]  Since January 17, 2013, [Mother and Father] shared [] legal and physical custody of [the Child] on a week on, week off schedule with exchanges every Friday at 5:00 p.m.  [Father's] residence in Shenango Township, [Lawrence County, Pennsylvania] was listed as the primary residence [for the Child] so the [C]hild could continue attending [school in] the Shenango Area School[ District].  The holidays were divided among the parties as agreed upon as has been the past custom.  [The Child] is fifteen years of

_____

[*] Retired Senior Judge assigned to the Superior Court.

age and has attended the Shenango Area School District schools [] his [ entire academic life.[1]]

Toward the end of May[] 2021, [Father] was laid off from his [employment] in Apollo, [Armstrong[2]] County, Pennsylvania. As of the end of May 2021, [Father] was permanently laid off from [his employment. Father,] as of September 2021, has been employed at the New Kensington Municipal Sanitary Authority, earning approximately the same amount as he [] previously earned, with benefits.

In February 2022, [Father] and his wife purchased a [house] in New Kensington[, Westmoreland County, Pennsylvania,] and sold [Father's house] in Shenango Township, Lawrence County. [Father] and his wife continued to rent [Father's] Shenango [Township house] from the new owners until [] May 18, 2022. On May 18, 2022, [Father] moved with his wife, their three children[, and the Child], who is the subject of this custody matter, during [Father's physical] custody time.

On June 6, 2022, [Father] filed a petition to relocate from Shenango Township, Lawrence County, to New Kensington, [Westmoreland County. Father's New Kensington residence] is approximately [a] one[-]hour [drive] from Shenango Township.

[Mother] is employed in the New Castle [Area] School District[[3]] and lives in the City of New Castle, Lawrence County, Pennsylvania. [Father] no longer lives in the Shenango Area School District. [Mother] has been looking to buy a [house] in the

_____

[1] Shenango Area School District is located in the southern portion of Lawrence County, Pennsylvania, and services families residing in Shenango Township and South New Castle Borough. *See* https://www.shenangoschools.org/district/about-us/ (last visited 3/27/23).

[2] The trial court identified Apollo as a borough located in Butler County, Pennsylvania. Apollo is, in fact, located in Armstrong County, Pennsylvania.

[3] The New Castle Area School District is located in Lawrence County, Pennsylvania, and services families residing in the City of New Castle and Taylor Township. *See* https://www.ncasd.com/GeneralInformation.aspx (last visited 3/27/23).

Shenango Area School District but has, [as of the August 29, 2022] hearing, been unsuccessful.

Because neither parent lives in the Shenango Area School District, the [C]hild must either attend the Kiski Area School District, where [Father] resides[,[4]] or the New Castle [Area] School District, where [Mother] resides, unless one [parent pays, or both parents pay,] tuition [to] the Shenango Area School District, which is somewhere between $12,000.00 and $14,000.00 per year. At the time of the [August 2022] hearing, neither parent [] made any payment [of,] or arranged to make payment of[,] tuition to the Shenango Area School District.

Trial Court Findings of Fact, Conclusions of Law, and Order of Court, 9/6/22, at ¶¶1-11 (paragraph formatting modified, extraneous capitalization omitted). On September 6, 2022, the trial court entered an order granting Father's petition to relocate. *Id.* at 7. The trial court also entered a custody order granting Father's request to modify custody. Pursuant to the September 6, 2022 custody order, Mother and Father continued to share legal and physical custody of the Child but Father was granted physical custody of the Child

---

[4] The Kiski Area School District provides educational services to families residing in, *inter alia*, Allegheny Township, Pennsylvania. ***See*** https://www.kiskiarea.com/apps/pages/index.jsp?uREC_ID=771273&type=d&pREC_ID=1172514 (last visited 3/27/23). Father's mailing address is New Kensington, Pennsylvania, but the physical location of Father's residence is Allegheny Township, Pennsylvania. Therefore, Father's residence is located in the Kiski Area School District.

during the academic school year so that the Child could attend school in the Kiski Area School District.[5] *Id.* at 11-15. This appeal followed.[6]

Mother raises the following issues for our review:

1. Did the trial court err by granting Father's request for relocation?

2. Did the trial court err in basing its decision upon Mother's failure to either find a [house] in Shenango Township, or make arrangements to pay tuition [to] the Shenango Area School[ District]?

3. Did the trial court err [as a matter of] law in failing to consider evidence presented by Father that discredited Father['s] and [the] Child's testimony?

4. Did the trial court err in failing to consider its findings opposing Father's requested relocation based upon similar circumstances in May [] 2021?

5. Did the trial court err in failing [] to consider Father's contemptuous conduct in Father's unlawful disobedience with a then-existing custody order[?]

_____

[5] Mother was granted physical custody of the Child the second and fourth weekends of each month during the academic school year from Friday at 5:00 p.m. to Sunday at 6:00 p.m., as well as three uninterrupted weeks in both June and July and the first two weeks of August of each year. Trial Court Findings of Fact, Conclusions of Law, and Order of Court, 9/6/22, at 12-13. A holiday schedule designated each parent as having physical custody during certain holidays with the holiday schedule superseding the general physical custody schedule. *Id.* at 13.

[6] Mother filed a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i), along with her notice of appeal on September 30, 2022. The trial court filed a Rule 1925(a) opinion on October 3, 2022, relying on its September 6, 2022 Findings of Fact, Conclusions of Law, and Order of Court.

6.      Did the trial court err in elevating the Child's preference over the other factors of 23 Pa.C.S.[A.] § 5337(h) which weighed in favor of denying Father's request for relocation?

Mother's Brief at 2-3 (extraneous capitalization omitted).

In sum, Mother's issues challenge the trial court's order granting Father's petition to relocate and modify physical custody for the Child.[7]  Our scope and standard of review of such custody determinations are well-settled.

---

[7] Father's petition to relocate and modify custody did not set forth a proposed modification of custody.  **See generally** Father's Petition to Relocate and Modify Custody, 6/6/22.  In Father's notice of relocation, however, Father set forth a proposed modification of custody as follows:

> At the start of the school year, Father would have custody of [the Child] Monday through Friday.  Mother would have the second, third, fourth, and fifth weekends of each month from Friday after school until Sunday evening.  During the summer, Mother would have custody from Monday afternoon until Friday morning each week.  Father would then have every Friday morning until Monday afternoon.  Vacation and holiday schedules would remain the same.

Father's Notice of Relocation, 5/11/22, at unnumbered page 3.

In his petition to relocate and modify custody, Father avers that he filed his notice of relocation with the trial court on April 28, 2022.  Father's Petition to Relocate and Modify Custody, 6/6/22, at ¶5.  Father's notice of relocation does not appear, however, as part of the trial court docket.  This lack of filing is of no consequence, however, because pursuant to Section 5337(c), "[t]he party seeking to relocate does not make an initial filing with the trial court, but rather sends by certified mail to every other party with custody rights a notice in accordance with Section 5337(c)." **E.D. v. M.P.**, 33 A.3d 73, 79 (Pa. Super. 2011).

Mother asserts that she received Father's notice of relocation on May 11, 2022.  Mother's Petition to Dismiss Father's Notice of Proposed Relocation, 5/31/22,

> Our scope [of review] is of the broadest type and our standard [of review] is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial [court that] presided over the proceedings and[,] thus[,] viewed the witnesses [firsthand]. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

> **E.D. v. M.P.**, 33 A.3d 73, 76 (Pa. Super. 2011) (citation omitted). With any child custody case, this Court has long stated that the paramount concern is the best interests of the child. **Landis v. Landis**, 869 A.2d 1003, 1011 (Pa. Super. 2005). This standard requires a case-by-case assessment of all [] the factors that may legitimately affect the "physical, intellectual, moral[,] and spiritual well-being" of the child. **Id.** When a custody dispute involves a request by a party to relocate, we have explained, "there is no black[-]letter formula that easily resolves relocation disputes[. R]ather, custody disputes are delicate issues that must be handled on a case-by-case basis." **Baldwin v. Baldwin**, 710 A.2d 610, 614 (Pa. Super. 1998).

---

at ¶4. A copy of Father's notice of relocation is attached as an exhibit to Mother's petition to dismiss Father's notice of proposed relocation. **Id.** at Exhibit A. A certificate of service attached to Father's notice of relocation states that Mother was served with the notice of relocation *via* certified mail on May 4, 2022. **Id.** At the relocation and custody hearing, Father agreed that the notice of relocation was served on Mother "sometime in early May" 2022. N.T., 8/29/22, at 22. As Father does not dispute Mother's assertion that she received his notice of relocation on May 11, 2022, and absent further proof of the date on which the certified mailing was delivered, we deem the notice of relocation as having been provided to Mother on May 11, 2022. **See** 23 Pa.C.S.A. § 5337(c)(2) (requiring a notice of relocation to be given to the non-relocating party, as discussed *infra*, by certified mail, return receipt requested).

*C.M.K. v. K.E.M.*, 45 A.3d 417, 421 (Pa. Super. 2012) (original brackets omitted).

Pursuant to Section 5337 of the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, a parent with custody rights to a child may not relocate unless "every individual who has custody rights to the child consents to the proposed relocation" or "the [trial] court approves the proposed relocation." 23 Pa.C.S.A. § 5337(b)(1) and (2). In other words, a parent seeking to relocate ("the relocating parent") cannot unilaterally relocate.[8]

The relocating parent must provide notice of the proposed relocation, along with other certain information (*see* 23 Pa.C.S.A. § 5337(c)(3)), to other individuals with custody rights to the child (collectively, "the non-relocating parent") no later than 60 days prior to the date of the proposed relocation or 10 days after the date the relocating parent knows of the relocation if the relocating parent "did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60-day notice[,] and it is not reasonably possible to delay the date of relocation so as to comply with the 60-day notice." 23 Pa.C.S.A. § 5337(c). The non-relocating parent "may file with the [trial] court an objection to the proposed relocation and seek a

---

[8] The term "relocation" is defined as "[a] change in a residence of the child which significantly impairs the ability of a non[-]relocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a).

temporary or permanent order to prevent the relocation."[9]  23 Pa.C.S.A. § 5337(d).  If the non-relocating party "objects to either relocation or modification of the custody order, a hearing shall be held as provided in [Section 5337(g)(1)]."  23 Pa.C.S.A. § 5337(d).  Any objection by the non-relocating parent must be in the form of a counter-affidavit that substantially complies with Section 5337(d).  **Id.**

"If a counter-affidavit regarding relocation is filed with the [trial] court which indicates the non[-]relocating party objects either to the proposed relocation or to the modification of the custody order consistent with the proposal for revised custody schedule, the [trial] court shall modify the existing custody order only after holding a hearing to establish the terms and conditions of the order pursuant to the relocation indicating the rights, if any, of the non[-]relocating [parent]." 23 Pa.C.S.A. § 5337(f).  The expedited full hearing on the proposed relocation must be held **before** the relocation occurs.[10]  23 Pa.C.S.A. § 5337(g)(1) (emphasis added).

Section 5337(h) sets forth ten factors that a trial court must consider, "giving weighted consideration to those factors which affect the safety of the

---

[9] Upon receipt of Father's notice of relocation on May 11, 2022, Mother did not seek a temporary or permanent order preventing Father from relocating. Instead, on May 31, 2022, Mother filed a petition to dismiss Father's notice of proposed relocation, averring that Father already relocated and requesting *inter alia*, that the Child be returned to Lawrence County.  Mother's Petition to Dismiss Father's Notice of Proposed Relocation, 5/31/22, at ¶6, ¶14.

[10] Only upon the finding of exigent circumstances, may a trial court approve a relocation pending an expedited full hearing.  23 Pa.C.S.A. § 5337(g)(3).

child[,]" in determining whether to grant, or deny, a petition for proposed

relocation. 23 Pa.C.S.A. § 5337(h). Those factors are as follows:

> (1) The nature, quality, extent of involvement[,] and duration of the child's relationship with the party proposing to relocate and with the non[-]relocating party, siblings[,] and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child[,] and the likely impact the relocation will have on the child's physical, educational[,] and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the non[-]relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (8) The reasons and motivation of each party for seeking or opposing the relocation.
>
> (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.
>
> (10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h)(1-10). "Section 5337(h) mandates that the trial court

shall consider all of the factors listed therein, giving weighted consideration to

those factors affecting the safety of the child." **E.D.**, 33 A.3d at 81 (emphasis omitted). "The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in" Section 5337(h). 23 Pa.C.S.A. § 5337(i)(1). "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. § 5337(i)(2).

Pursuant to Section 5337(j),

[the trial] court may consider a failure to provide reasonable notice of a proposed relocation as:

(1) a factor in making a determination regarding the relocation;

(2) a factor in determining whether custody rights should be modified;

(3) a basis for ordering the return of the child to the non[-]relocating [parent] if the relocation has occurred without reasonable notice;

(4) sufficient cause to order the [relocating parent] to pay reasonable expenses and counsel fees incurred by the [non-relocating parent] objecting to the relocation; and

(5) a ground for contempt and the imposition of sanctions against the [relocating parent].

23 Pa.C.S.A. § 5337(j). Finally, "[i]f a party relocates with the child prior to [an expedited full] hearing, the [trial] court shall not confer any presumption in favor of the relocation." 23 Pa.C.S.A. § 5337(l).

When the non-relocating party objects to both the relocation, as well as the proposed modification of custody in a counter-affidavit, the trial court, in

addition to considering the ten factors enumerated in Section 5337(h), must also consider the sixteen custody factors set forth in Section 5328(a) before granting relocation and modifying an existing custody order. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 836 (Pa. Super. 2013). Those factors are as follows:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party[,] and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in [23 Pa.C.S.A. § ]5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life[,] and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent[,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1-16).

Here, Mother asserts that the trial court's order granting relocation and modification of custody was not in the best interest of the Child but, rather, was a "reward" to Father "for having contrived a scenario that successfully bootstrapped his long-held desire to relocate." Mother's Brief at 14. In granting Father's petition to relocate and modify custody, Mother contends, the trial court "gave a favorable presumption to Father's [relocation] that occurred before notice [of relocation was provided.]" *Id.* Mother argues that the trial court erred in finding that "the overriding factor [in its decision was] that neither party now lives in the Shenango Area School District and the [Child] cannot attend the Shenango Area [School District s]chools." *Id.* at 12. Mother asserts that the trial court, in so finding, ignored "the option of denying Father's request to relocate[] and requiring him to move back to the Shenango Area School District." *Id.* at 8. Mother argues that the trial court "affirmatively found that the move to [the Kiski Area School District] would

- 12 -

improve the Child's life only because the [t]rial [c]ourt had come to the incorrect underlying conclusion that remaining in the Shenango Area [School District] was an impossibility." *Id.* at 13 (emphasis omitted).

Mother further asserts that the trial court, in considering the Child's preference to relocate with Father to the Kiski Area School District (*see* 23 Pa.C.S.A. § 5337(h)(4)), erred in finding that the Child, "a little over a year later," appreciated the impact the relocation would have "on his relationship with his friends in the Shenango Area School District or his extended paternal and maternal families living in the New Castle, Lawrence County area."[11] Mother's Brief at 14-17. Mother argues that the trial court "improperly considered that [the Child] had begun running with the Kiski Area cross[-]country team and made friends with members of the team" when the trial court considered the Child's preference to relocate and found that the Child appreciated and understood the impact relocation would have on his relationship with Mother and his extended family. *Id.* at 17, 19. Mother

_____

[11] Mother asserts that the trial court, in its May 11, 2021 order denying Father's previous petition to relocate and modify custody, found that the Child's preference to relocate with Father to the Kiski Area School District was "not realistic, especially in light of the many athletic activities that the [C]hild wants to continue to be involved in." Mother's Brief at 15, *citing* Trial Court Findings of Fact, Conclusions of Law, and Order of Court, 5/11/21, at 5. Mother argues that the trial court appropriately found the Child's preference to relocate to be unrealistic in May 2021, and now erred in finding the Child's preference to relocate to be reasonable and well-balanced in August 2022, a little over a year later. This argument sounds in a challenge to the credibility of the Child's testimony regarding his preference and, as stated *supra*, we defer to the trial court's credibility determinations.

contends that "[b]ut for Father's violation of the [t]rial [c]ourt's prior [o]rder, and his relocation prior to obtaining permission from the [t]rial [c]ourt, the Child would have remained involved in the Shenango [Area] School District's cross-country team." *Id.*

We begin our review of Mother's challenge to the trial court order granting Father's relocation request and modifying physical custody by examining the procedural posture of events that preceded the August 2022 hearing. As discussed *supra*, Mother acknowledged that she received notification of Father's proposed relocation on May 11, 2022. Mother's Petition to Dismiss Father's Notice of Proposed Relocation, 5/31/22, at ¶4; *see also* N.T., 8/29/22, at 84 (acknowledging that she (Mother) received notice of the proposed relocation on May 11, 2022, when the notice arrived in the mail). Father relocated on May 18, 2022, seven days after providing Mother notice of the proposed relocation. Trial Court Findings of Fact, Conclusions of Law, and Order of Court, 9/6/22, at ¶8; *see also* N.T., 8/29/22, at 46 (stating that, the relocation occurred on May 18, 2022). On May 23, 2022, Mother filed a counter-affidavit regarding relocation in which Mother objected to the relocation and the proposed modification of custody. Mother's Counter-Affidavit Regarding Relocation, 5/23/22. Mother filed a petition to dismiss Father's notice of proposed relocation on May 31, 2022. Mother's Petition to Dismiss Father's Notice of Proposed Relocation, 5/31/22. Father filed his petition to relocate and modify custody on June 6, 2022. Father's

- 14 -

Petition to Relocate and Modify Custody, 6/6/22. An expedited full hearing on the matter was conducted on August 29, 2022.

Based upon a review of this procedural posture, Father clearly violated the notice requirements of Section 5337(c) by failing to provide Mother the requisite notice of the proposed relocation. *See* 23 Pa.C.S.A. § 5337(c). Father never established that he did not know, and that he could not have reasonably known, of relocation in sufficient time to comply with the Section 5337(c) 60-day notice requirement. Nor did Father establish that he was incapable of delaying relocation so as to comply with Section 5337(c). Moreover, contrary to the detailed procedural requirements set forth in Section 5337, Father relocated prior to the expedited full hearing without Mother's consent or the trial court's approval.

We emphatically do not condone Father's actions and his failure to adhere to the procedural requirements of Section 5337. Nevertheless, the relief that Mother seeks – to require Father to relocate back to Shenango Township – asks this Court to "un-ring the bell" and rewind history in a series of events, *i.e.* Father's relocation and the Child's attendance at a Kiski Area School District school for almost a full academic year, and such a request presents an impossibility for this Court. ***E.B.***, 209 A.3d at 466 (stating that, as part of its review of custody matters, an appellate court cannot "un-ring the bell" and rewind the history of a child's life as if it never happened); ***see also*** 23 Pa.C.S.A. § 5337(j) (setting forth the potential consequences to the relocating parent for failing to provide reasonable notice of a proposed

relocation, including using the failure to provide reasonable notice as grounds for contempt); 23 Pa.C.S.A. § 5337(l) (setting forth the consequence to the relocating parent for relocating prior to the expedited full hearing).[12]

Although courts cannot unwind a child's history, this does not mean that Father's actions in the case *sub judice* are without consequences. Section 5337(j) prescribes that the trial court may consider a failure to provide reasonable notice of a proposed relocation as a factor in whether to grant, or deny, relocation and, if granted, whether to modify custody rights; a basis for returning the child to the non-relocating parent; or a ground for ordering the relocating parent to pay the non-relocating parent's reasonable expenses and counsel fees incurred as part of the relocation matter or to hold the relocating parent in contempt and impose sanctions.[13] 23 Pa.C.S.A. § 5337(j). In the instant matter, the trial court, in reaching its decision to grant Father's relocation petition, did consider Father's action of relocating before receiving either Mother's consent or trial court approval. Trial Court Findings of Fact, Conclusions of Law, and Order of Court, 9/6/22, at ¶13 (stating, Father "relocated to New Kensington . . . despite not having approval from [the trial

---

[12] Additionally, pursuant to Section 5339, "a [trial] court may award reasonable interim or final counsel fees, costs[,] and expenses to a party if the [trial] court finds that the conduct of another party was obdurate, vexatious, repetitive[,] or in bad faith." 23 Pa.C.S.A. § 5339.

[13] Although certainly an option, Mother did not pursue a motion for contempt against Father in the case *sub judice*.

court] to relocate), ¶18 (stating, the trial court "is troubled by the fact that [Father] relocated before receiving permission to relocate").

Regarding the consequence to Father of relocating prior to the August 2022 expedited full hearing and before entry of the trial court's order granting him permission to relocate, Section 5337(l) provides that "[i]f a party relocates with the child prior to [an expedited full] hearing, the [trial] court shall not confer any presumption in favor of the relocation." 23 Pa.C.S.A. § 5337(l). Contrary to Mother's assertion that the trial court "gave a favorable presumption to Father's move," we find no record support for this assertion. When considering the Section 5337(h) factors, the trial court, in fact, viewed Father's relocation as having a negative effect on whether to grant relocation. For example, in considering the impact the proposed relocation would have on the Child's physical, educational, and emotional development (Section 5337(h)(2)), the trial court weighed the relocation as having a negative impact when it found that the Child would be a one-hour drive away from Mother and his extended family and this distance would impact Mother's and the extended family's ability to interact with the Child and attend the Child's activities, such as cross-country and track events. Trial Court Finding of Facts, Conclusions of Law, and Order of Court, 9/6/22, at 3-4. As discussed *infra*, the trial court adequately discussed the Section 5337(h) factors before granting Father's request to relocate and, as such, it is beyond the purview of this Court to re-evaluate and re-weigh the factors in an attempt to reach a different result. ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (stating,

"The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.").

Although Mother challenges the trial court order granting Father's relocation petition generally, Mother narrows her appeal to two specific aspects of the ten Section 5337(h) factors. Specifically, Mother challenges the trial court's consideration of, and weight assigned to, the Child's preferences pursuant to Section 5337(h)(4), and the "other factors" affecting the best interest of the Child pursuant to Section 5337(h)(10), namely that neither parent now lives in the Shenango Area School District.

Overall, the trial court, in granting Father's relocation petition and modifying physical custody to accommodate the relocation, adequately weighed the Section 5337(h) factors related to relocation and the Section 5328(a) factors concerning modification of custody.[14] Trial Court Findings of

_____

[14] We note that in Paragraph 17 of its September 6, 2022 Findings of Fact, Conclusions of Law, and Order of Court, the trial court set forth that it considered the Section 5337(h)(6) factor – whether relocation would enhance the general quality of life of the relocating parent. Trial Court Findings of Fact, Conclusions of Law, and Order of Court, 9/6/22, at ¶17. A review of this paragraph, however, demonstrates that the trial court's analysis primarily concerns consideration of the Section 5337(h)(7) factor – whether relocation would enhance the general quality of life of the child. *Id.* (stating, "[a]s long as [the Child] is attending in person school in the Kiski Area [School District s]chools, the move does enhance the [C]hild's life").

Fact, Conclusions of Law, and Order of Court, 9/6/22, at 2-10.  In considering

the Child's preference, the trial court found that

_____

Regarding the Section 5337(h)(6) factor – enhancement of the relocating parent's life – the trial court found that prior to relocating, Father owned two houses, one in Shenango Township and one in Allegheny Township (New Kensington).  *Id.* at ¶7.  After selling his house in Shenango Township, Father continued to rent that house until relocating, at which time Father, the Child, and Father's family (Father's wife and three additional children) relocated to their house in the New Kensington area.  *Id.*  This house was a one-hour drive from Shenango Township.  Father's new job was also located in the New Kensington area.  *Id.* at 6.  Thus, a reasonable inference, based upon the trial court's findings and considerations, is that Father's life was enhanced economically by owning only one house after relocating versus owning two houses or owning one house and renting one house, and that Father benefited from living closer to his current place of employment and by spending less time driving.  ***See Meyer-Liedtke v. Liedtke***, 762 A.2d 1111, 1114 (Pa. Super. 2000) (noting that, "[i]t is beyond belief [] that any parent would petition to relocate their children if said relocation would not contribute to the personal happiness and emotional well-being of the petitioning parent").  This inference is supported by Father's testimony at the August 2022 hearing wherein Father stated,

> I had to leave the house [in Shenango Township] by [5:00 a.m. for work], so [I had to wake up] at 4:30 [a.m.]  . . .  With the hour drive, I wouldn't be [home] in time to help [with the children] or attend [their] activities.  I was always having to go to bed or a lot of times by the time I would get home . . . the kids would, you know, be in bed or [I would] miss dinner with the family.  . . .  I actually fell asleep one day on the way home and crashed [my vehicle because of] exhaustion, [being] tired.  . . .  [When I had to travel from Shenango Township to the New Kensington area for work,] I was spending about $90[.00] every third day [on gas].

N.T., 8/29/22, at 17.  Therefore, we deem the trial court's analysis of the Section 5337(h)(6) factor adequate and supported by the record.  Moreover, Mother did not specifically challenge the trial court's consideration of this factor on appeal, as discussed *supra*.

Because neither parent lives in Shenango Township and neither parent has made arrangements to pay tuition to the Shenango Area School District, [the Child] can no longer attend Shenango Area School District schools. Neither the [C]hild, [Mother, nor Father] expressed any desire to have the [C]hild attend school in the New Castle Area School District. [The Child] expressed a strong desire to move to New Kensington and to attend the Kiski Area [School District s]chools. He is an A/B student, mature for his age, and firm in his desire. He explained that he has a close relationship with his three half siblings and that he has a [step-uncle] his age who already attends the Kiski Area schools. He also explained that he has been running with the Kiski Area cross[-]country team during his week on[,] week off time at his Father's home and has made friends with the members of the Kiski Area cross[-]country team. The reasons for his expressed preference are reasonable and demonstrate that he [] considered the positives and the negatives involved in such a move.

Trial Court Findings of Fact, Conclusions of Law, and Order of Court, 9/6/22, at ¶15. In considering "other factors" that affected the best interest of the Child pursuant to Section 5337(h)(10), the trial court found that,

The overriding factor is that neither party now lives in the Shenango Area School District and the [C]hild cannot attend the Shenango Area [s]chools. The [trial c]ourt realizes that tuition could be paid that would allow the [C]hild to continue in the Shenango Area School District for the next three years, but, neither party has made arrangements to pay tuition and the [C]hild can now not attend [school in] the Shenango Area School[ District]. The [C]hild [is eligible, based upon Mother's residence or Father's residence to] either attend the New Castle [Area] School District, which neither party wants him to do, or attend the Kiski Area School District, where the [C]hild is comfortable. In addition, the [C]hild is now fifteen years of age and a good student with sound reasoning for his desire to attend [school in] the Kiski Area School District.

*Id.* at ¶20.

In reviewing the record, we are ever-mindful that, "while a child's preference is not controlling, the preference does constitute an important factor that must be carefully considered in determining the child's best interests." *E.C.S. v. M.C.S.*, 256 A.3d 449, 455 (Pa. Super. 2021) (original quotation marks and citation omitted). As with all child-custody matters, the objective of the trial court is to ascertain, and base its decision on, the best interests of the child. Courts "must be mindful of the dynamism of the process of growth and maturity of children, as well as the circumstances of their parents' lives, where the only constant is change. These are factors which may require continuing review of the best interest of the child, and demand a degree of flexibility such as would allow the [trial] court the discretion to make necessary changes when the best interest of the child require such." *Karis v. Karis*, 544 A.2d 1328, 1331-1332 (Pa. 1988).

Here, the Child testified that he enjoyed the extra-curricular activities of cross-country and track, and participated in cross-country training in the Kiski Area School District over the summer. N.T., 8/29/22, at 64. The Child also stated that he has friends in his Kiski Area School District school and in his Father's neighborhood, including his step-uncle who is the same age as the Child and attends the same school. *Id.* The Child expressed a desire to attend school in the Kiski Area School District "because [the Kiski Area] cross[-]country and track program[s are] a lot better[.]" *Id.* at 65. The Child further explained that, "I've already seen improvements in myself[ and] I'm better at running and almost all of the friends I talk to now live in [the Kiski

Area School District]." *Id.* The Child also stated that the Kiski Area School District offered more academic classes than the Shenango Area School District because it was a larger school system, and that the Child thought the Kiski Area School District presented more opportunities for him, academically. *Id.* The Child understood that if enrolled in the Kiski Area School District he would need to reside with Father during the week and stated that he could maintain his relationship with Mother by seeing her on the weekends, during free time, and on holidays, as well as at sport events and by spending more time with her in the summer. *Id.* at 65-67. We concur with the trial court, and the record supports, that the Child's preferences are to attend school in the Kiski Area School District, and we discern no abuse of discretion in the trial court's assessment of the Child's preference as being favorable to granting relocation.[15]

We further concur with the trial court, and the record supports, that the other factor affecting the Child's best interests is that, at the time of the

_____

[15] To the extent Mother asserts that the trial court erred in finding the Child's testimony to be credible and his rationale for wanting to attend school in the Kiski Area School District to be reasonable and well-thought out, we find this assertion unsupported by the record. We defer to the trial court's credibility assessment, and the trial court's conclusion that the Child's rationale is reasonable and well-thought out is supported by the record wherein the Child explained that the Kiski Area School District offered him additional academic opportunities and the ability to improve in his performance in extra-curricular activities while still maintaining a healthy relationship with Mother. *See E.B.*, 209 A.3d at 467 (stating that, an assessment of the best interest of the child must be based upon the evidence and testimony offered at the present hearing).

August 2022 hearing, the Child's options for attending school were to attend school in either the New Castle Area School District or the Kiski Area School District. Neither parent expressed a desire for the Child to attend school in the New Castle Area School District, and the Child had no prior exposure to, or participation in, the academic and sports programs in the New Castle Area School District. The Child stated that the Kiski Area School District was larger and presented additional academic opportunities for him, and the sports programs in the Kiski Area School District allowed him to improve his athletic performance. As of the August 2022 hearing, the Child's attendance in the Shenango Area School District was not an option because neither parent lived in the school district and did not pay the tuition so the Child could attend the Shenango Area School District.[16]

---

[16] Mother asserts that the trial court erred in failing to consider the additional options of requiring Father to relocate back to Shenango Township or pay the tuition for the Child to attend school in the Shenango Area School District. Mother's Brief at 16. The best interests of the Child, however, do not support the Child's enrollment in the Shenango Area School District. As discussed *supra*, the Child prefers attending school in the Kiski Area School District, has friends in that school district, and can excel academically, as well as in sports, in the Kiski Area School District. We cannot "un-ring" Father's relocation nor can the Child's life wait while Mother continues to search for a residence in the Shenango Area School District. **See Karis**, 544 A.2d at 1332 (stating, "[b]ecause we cannot undo the past we must be more careful of the present, all to soon in the life of a child, to be the past"). Moreover, while Mother asserts that Father should have been ordered to pay tuition in the Shenango Area School District, we find this request to be outside the purview of a relocation and modification of custody action.

In sum, we reiterate that we do not condone Father's contemptuous actions of failing to provide Mother requisite notice of the proposed relocation and for relocating prior the expedited full hearing on the matter. Nonetheless, the trial court considered the ten factors of Section 5337(h) in granting the Father's relocation petition and considered the sixteen factors of Section 5328(a) in modifying custody. Based upon the record before us, we do not discern an abuse of discretion or error of law in the trial court's decisions. Consequently, we affirm the trial court order granting relocation and modifying custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2023